**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 23-CR-315-1 (ABJ)** |
| | **:** | |
| **CHRISTOPHER BROADY,** | **:** | |
| also known as "Suave," | **:** | |
| also known as "Swerve," | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

<u>**UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant Christopher BROADY be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(E). The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

<u>**PROCEDURAL HISTORY AND RELEVANT FACTS**</u>

On September 12, 2023, a federal grand jury sitting in the District of Columbia returned a three-count indictment charging BROADY with Possession With Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D); Using, Carrying, and Possessing a Firearm During, in Relation to, and in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). That same day, United States Magistrate Judge Robin M. Meriweather issued a warrant for BROADY's arrest.

On September 13, 2023, United States Magistrate Judge Robin M. Meriweather signed Search Warrant 23-SW-303, authorizing the search of 3700 9th Street, Southeast, #1018, Washington, D.C ("PREMISES 1") as well as any and all digital devices found therein.  As articulated in the Affidavit in Support of that search warrant, FBI agents anticipated that BROADY would be present at that location based on his prior geolocation data.

Also on September 13, 2023, United States Magistrate Judge Robin M. Meriweather also signed 23-SW-304, authorizing the search of 2758 Shipley Terrace, Southeast, Washington, D.C. ("PREMISES 2") as well as any and all digital devices found therein.   Pursuant to a pre-determined plan, FBI agents executed Search Warrants 23-SW-303 and 23-SW-304 at approximately the same time.  Shortly before the warrants were executed, FBI agents monitoring BROADY's geolocation data observed that BROADY had traveled from the vicinity of PREMISES 1 to the vicinity of PREMISES 2.

FBI agents arrived at PREMISES 1 to execute search warrant 23-SW-303, at approximately 8:00 p.m.  Markquette Cowan (23-MJ-255) was the only person present inside PREMISES 1 when FBI arrived.   During the execution of the search warrant, FBI agents observed and seized the following items from common areas in the residence – namely, the kitchen and living room:

➢       Loaded "Mac 11," Masterpiece Arms 9mm handgun bearing serial number FX 38253, fitted with an apparent suppressor, in a kitchen drawer along with unloaded magazines for a Glock, .40 caliber handgun, a loaded magazine containing of 7.62 x 59mm ammunition; a digital scale, and a plastic bag containing 18 rounds of .357 caliber ammunition.



➢    A loaded Glock, Model 23, .40 caliber semi-automatic handgun bearing serial number

BWTS053, and two additional magazines loaded with .40 caliber ammunition.



➢    Approximately four pounds of marijuana packaged for distribution;



➢ 3 bottles of Promethazine DM syrup;



➢ One set of body armor and tactical helmet.

 

FBI agents also discovered mail matter addressed to Cowan in what was designated by FBI as "Bedroom One" within PREMISES 1.

Inside "Bedroom Two" within PREMISES 1, FBI agents recovered the following:

➢ An unloaded Remington 870, pump-action 12-gauge shotgun;



➢ 12-guage shotgun shells;



➢ Digital scales;



➢     A black duffle bag containing multiple packets of THC-infused edibles; and



➢     A debit Visa virtual wallet card issued to BROADY.



FBI agents and MPD officers arrived at PREMISES 2 to execute search warrant 23-SW-304

at approximately 8:05 p.m. When FBI agents arrived at PREMISES 2, BROADY was standing on

the sidewalk in front of that location, along with multiple other individuals. An FBI agent

immediately recognized BROADY, approached him, and placed him under arrest pursuant to the

federal arrest warrant issued on September 12, 2023.  As demonstrated by the Body Worn Camera
("BWC") during his arrest, as well as photos taken after he was in custody, BROADY was wearing
a black balaclava on his head, a black Under Armor pullover with reflective tape on the rear neck
area, black track pants and black, white, and purple sneakers when he was taken into custody.



    Search incident to BROADY's arrest, law enforcement recovered three bags of marijuana
from BROADY's left front pants pocket.  The three bags, each of which was knotted at the top, were
contained in a large plastic bag.



A subsequent review of CCTV camera footage from the hallway outside PREMISES 1 shows BROADY – wearing the same clothes he was arrested in and carrying a black plastic bag knotted at the top – walking to the elevator at 7:26 pm, approximately 40 minutes before he was arrested at PREMISES 2. A visually identical plastic bag was recovered at PREMISES 2 in the area where BROADY was standing when he was arrested.

*BROADY leaving PREMISES 1*

*Black Plastic Bag at PREMISES 2*



## ARGUMENT

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the United States will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should neither be a mini trial, nor used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210; Williams, 798 F. Supp. at 36.

### 1.    The United States' Bases for Detention

The United States seeks pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(E), because Defendant is charged with a firearm offense. Pursuant to 18 U.S.C. § 3142(e)(3)(B), Defendant's charges carry a rebuttable presumption in favor of pretrial detention. The rebuttable presumption "'operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption.'" Id. at 124-25 (quoting United States v. Alatishe, 768 F.2d 364, 371 (D.C.Cir.1985) (original emphasis); see also United States v. Portes, 786 F.2d 758, 764 (7th Cir.1985) (the presumption requires the defendant to come "forward with some evidence that he will not flee or endanger the community if released") (internal quotation and citation omitted)). As this Court has held, the defendant must present evidence to rebut the presumption. United States v. Lee, 195 F. Supp. 3d 120, 124, 125 (D.D.C. 2016).

Moreover, even if Defendant presents evidence to rebut the presumption, the presumption does not disappear entirely. Id. at 125 (citing United States v. Ali, 793 F. Supp. 2d 386, 388 n.2 (D.D.C. 2011) (noting that the Bail Reform Act requires the Court to consider the rebuttable

presumption as a factor even if the Defendant "produces credible evidence" to rebut it); United States v. Bess, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial.")) The rebuttable presumption remains as a factor that must be considered by the Court, because it "'reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.'" Id. (quoting United States v. Stone, 608 F.3d 939, 945-46 (6th Cir. 2010)) (emphasis added).

Here, Defendant cannot rebut the presumption in favor of pretrial detention. In addition to the evidence found during the execution of federal search warrants, as outlined above, the charges in the Indictment relate to Defendant's participation in a shootout in a residential neighborhood while engaged in a federal drug trafficking offense – namely, Possession With Intent to Distribute Marijuana.

**2.      The Bail Reform Act Factors All Favor Detention Given Defendant's Risk of Flight and Danger to the Community**

As the Court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case.

**A.      The Nature and Circumstances of the Offenses Weigh in Favor of Detention**

The Nature and Circumstances of the charged offenses weigh heavily in favor of pretrial detention in this case.

As documented under MPD Criminal Case Number ("CCN") 23-089663, at approximately 3:15pm on June 5, 2023, MPD Officer Santiago was operating a marked police car in front of 302

Atlantic Street Southeast, Washington, D.C. 20020. Officer Santiago observed two vehicles operating at a high rate of speed down the 4300 block of 3rd Street Southeast – she observed that one vehicle was a silver sedan, later identified as a 2005 Nissan Altima ("the Altima"). Officer Santiago subsequently heard rapid gunfire coming from the direction of the 300 block of Atlantic Street Southeast. As she proceeded towards the rapid gunfire, she saw the Altima, which she previously observed speeding down 3rd Street Southeast, parked on the grass next to 302 Atlantic Street Southeast. She then observed two individuals running from the vehicle.

Residential surveillance video from the front of 229 Atlantic Street, Southeast, captured the shootout itself and BROADY his co-conspirator's abandonment of, and flight from, the Nissan Altima. As shown in the video footage, a light grey sedan operated by an unknown person turn left onto Atlantic Street Southeast from 3rd Street Southeast. Immediately behind the light grey sedan is a dark grey sedan followed by the Altima. The sound of gunfire begins before the dark grey sedan (blue circle) and the Altima (red circle) reach the intersection, and continues as both cars are in the frame.



The Altima did not complete the left turn onto Atlantic Street, Southeast, but rather drove straight – over the sidewalk, through a fence, and into the lawn adjacent to 302 Atlantic Street

Southeast.  Once the Altima came to rest, a black male wearing dark pants, a top with both white and black portions visible, and what appears to be a dark hat or item on his head exited the driver's door and ran into a wooded area. Based on the way he is holding his hands, it appears the driver is carrying something.



Shortly thereafter, a black male wearing a light colored shirt and light colored shorts exited the front passenger's door and ran into the wooded area.  The passenger then returned to the Altima, reached into the car, as if to grab an unknown item or items, and fled back into the wooded area.



Approximately 30 seconds later, two MPD cruisers are on scene and Officer Santiago can be heard telling her fellow officers "they ran to Valley.  Go to Valley, through the woods." Officer Santiago then broadcast a look out for a black skinny male, with a black head wrap and a white tank top.  As is visible in the map below, the wooded area into which BROADY and his co-conspirator ran separates Atlantic Street, Southeast, from Valley Avenue, Southeast.



Residential surveillance video from 217 Valley Avenue, Southeast, was focused on the wooded area and captured what appears to be BROADY and his co-conspirator fleeing from the Nissan.    At 3:12.08 (per the timestamp on the video), the video shows the bottom half of a person wearing dark pants and a light shirt, consistent with BROADY's clothing, carrying a rifle, as shown in the stills below.  The man with black pants is seen moving right-to-left in the frame, which – given the location of the camera – is consistent with travel from the location of the Altima to the 200 block of Valley Avenue, Southeast.



Shortly after the man with black pants leaves the frame, a man with gray shorts, consistent with the co-conspirator's clothing, ran through the frame from right to left – in the same direction that the man in the black pants had been moving.



Body Worn Camera ("BWC") footage from MPD officers shows that officers intercepted BROADY and his co-conspirator on Valley Avenue, Southeast, near the intersection of 4th Street, Southeast.  At the time, both men were wearing a white tank top and what could be described as a black ski mask on top of their heads.  BROADY was wearing black pants, a white tank top, and a black balaclava on the top of his head.  The co-conspirator was wearing a white tank top and light gray shorts, with a black gaiter-style mask on his head, and had a dark-colored shirt wrapped around his left arm. Officer Knight made contact with the men at 3:18pm and ordered them to stop.



Officer Knight then detained BROADY, conducted a protective patdown and, when he didn't find a firearm, he stated into the radio "I need someone to canvas that flight path we may have a ditched weapon."



Officers later discovered a Washington D.C. Identification Card issued to BROADY located in a pocket of the dark, long-sleeved shirt that had been wrapped around his co-conspirator's arm when Officer Knight stopped them.

16



At the same time that Officers were tending to BROADY and his co-conspirator, other had located their flight path through the wooded area and were searching for evidence. from the Altima to search for evidence. Officer Hernandez's BWC shows that, at 3:21pm he was located in the back yard of 223 Valley Avenue Southeast, and communicating with Officer Santiago (who was on the other side of the wooded area near the Nissan) about evidence he had found.



At 3:27pm, Officer Knight encounters Officer Hernandez at 223 Valley Avenue, Southeast (on the other side of the woods from the Altima).



Officers Knight and Hernandez then follow the blood trail back to the wooded area before returning to the walkway beside 223 Valley Avenue, Southeast. 217 Valley Avenue Southeast – from which the surveillance video of BROADY and his co-conspirator running through the woods – is visible in Officer Knight's BWC.



Officer Hernandez discovered two firearms in a trash can alongside 223 Valley Avenue, Southeast, at 3:28pm and calls it in on his radio.



The firearms were later determined to be a black Glock, Model 26,  9mm semi-automatic handgun bearing serial number BBMH494 and an American Tactical Omni Hybrid rifle chambered in 300AAC Blackout (.300 caliber), bearing serial number NS314895.

 

Both firearms were loaded with less-than the full complement of cartridges that their magazines could hold, further corroborating that thee recovered shell casings in these calibers were fired from these weapons.  Subsequent firearms testing confirmed that the 9mm and .300 caliber cartridge casings found in the intersection of 3rd Street Southeast and Atlantic Street Southeast were fired by the firearms recovered from the trash can.



At approximately 3:46pm, after the scene was secure, K9 Officers Hogan, followed by Officer Brown descended the steep wooded area through the flight path to look for additional evidence. During that canvas, Officers Hogan and Brown discovered a plastic grocery bag that was partially open, revealing a gallon-sized Ziploc bag filled with apparent marijuana.  Both the plastic bag and the Ziploc bag appeared to have blood on them.  The plastic bag was transferred to Officer Santiago.

The D.C. Department of Forensic Sciences ("DFS") responded to the scene to collect the Glock 26 and the American Tactical Omni Hybrid rifle from the garbage bin where Officer Hernandez discovered them. The crime scene technician also located $1,435 in United States currency in the co-conspirator's pants pocket.  The currency consisted exclusively of small bills - $20 or less – which is consistent with drug trafficking.

Detectives Colato, Treadwell and Chaplin responded to the crime scene, and  Detective Colato observed several shell casings from different caliber firearms in the middle of the intersection, including 300AAC Blackout, 9mm, and .40 caliber shell casings. Additional shell casings were observed in or near the Altima. The Altima was still running when the Detectives arrived, and both the driver and front passenger doors were open. The Altima had several gunshot holes on the windshield, and suspected blood stains on the front passenger seat.

A third firearm, a black Glock 17 handgun, was under the driver's seat in the vehicle and was later seized pursuant to a Superior Court for the District of Columbia search warrant.



Under the passenger seat was a bag of a green, leafy substance, consistent with marijuana in plain view. This bag was impounded with the vehicle.



Another bag of a green, leafy substance, consistent with marijuana was found on the ground outside the vehicle, immediately outside of the front passenger seat where HIS CO-CONSPIRATOR exited the vehicle.



Detective Colato was able to contact with the registered owner of the Nissan, who stated he sold the vehicle a month ago to someone named "Swerve," but hadn't gotten around to returning the tags. "Swerve" is a known street nickname utilized by BROADY. There are no firearms manufacturers in Washington D.C., meaning these firearms would have had to cross state lines.

### *Summary of Evidence Recovered and Map*

Below, is an overhead satellite map of the area involved in this incident with the following evidence displayed in the area where it was recovered. The Nissan Altima – identified as a silver rectangle.



***Search Warrant Executed on Nissan***

The Altima was searched pursuant to D.C. Superior Court Search Warrant 2023-CSWSLD-20930 on June 15, 2023.  During the search of the vehicle, DFS technicians collected DNA swabs of the exterior and interior doors, steering wheel, center console, and front interior compartment of the vehicle.  In addition to swabbing the vehicle, the following evidence items were discovered and seized.

1.      Glock, Model 17, 9mm semi-automatic handgun bearing serial number BWFH709 from underneath the driver's seat.  The Glock 17 was loaded with one round in the chamber and 16 rounds in a 17-round magazine.

 

2.      Marijuana packaged in a knotted plastic bag and a digital scale in the center console.

 

3.      Marijuana seized from the floor of the front passenger compartment.



4.      9mm shell casing recovered from the windshield wiper area of the Altima, consistent with a 9mm handgun being fired from the vehicle as it was moving.



***Verifying the Marijuana Weight***

On Thursday, August 17, 2023, FBI agents removed the marijuana evidence from the MPD Evidence Control Branch and transferred it to FBI custody.  Once at FBI, they utilized a calibrated scale to confirm the marijuana weights, which were as follows:

1.      Marijuana recovered from the wooded area / flight path.  This marijuana was contained within a gallon-sized Ziploc bag, with blood visible near the pink and blue "zipper" portion of the bag.  The bag weighed 95.7 grams, which converts to approximately 3.4 ounces.



2.      Marijuana recovered from outside the passenger door of the Altima.  This marijuana was contained within a knotted plastic bag.  This marijuana weighed 137 grams, which converts to approximately 4.8 ounces.



3.      Marijuana recovered from under the passenger seat of the Altima.  This marijuana was packaged in a clear plastic bag different in size and shape from the marijuana seized from the flight path and outside the vehicle. This marijuana weighed 56.5 grams, which converts to approximately 2 ounces.



4.    Marijuana recovered from the center console of the Altima.  This marijuana was packaged in a knotted plastic bag.  This marijuana weighed 28.5 grams, which converts to approximately 1 ounce.



5.    Combined, the marijuana weighed 232.7 grams, which converts to approximately 8.2 ounces, slightly more than ½ pound. The volume of marijuana, as well as the fact that it was separately packaged into different weights, as well as the presence of a digital scale and $1,400 in small bills are all indicative of marijuana distribution rather than personal use.



**B.    The Weight of the Evidence Against the Defendant Favors Pretrial Detention**

The evidence of both BROADY's guilt and his dangerousness to the community are incredibly strong and weigh heavily in favor of pretrial detention.  Surveillance video shows that BROADY participated in a gunfight while engaged in drug trafficking, resulting in the charges in the Indictment. BROADY was arrested at a known drug-dealing location, in possession of marijuana packaged for distribution.  Both video and GPS evidence show that BROADY traveled to that location from the apartment in which he was residing, an apartment where three firearms, four pounds of marijuana, body armor, and other evidence were recovered the same night that BROADY was arrested. Evidence gathered from BROADY's social media accounts demonstrates that he conspired with numerous individuals in committing these offenses – including but not limited to the individuals charged in Case Number 22-CR-303.

**C.    The Defendant's History and Characteristics Weigh in Favor of Detention**

BROADY'S history and characteristics weigh in favor of detention. BROADY has one prior conviction for Carrying a Pistol Without a License in D.C. Superior Court Case Number 2018 CF2 018614. That case resulted from BROADY having been osberved by MPD Officers on December 18, 2018, selling marijuana in the 3500 block of Wheeler Road, Southeast.  When Officers approached BROADY, he fled on foot. Officers gave chase and saw BROADY drop a Glock, Model 17, 9mm semi-automatic handgun into a trash bin while running away.  BROADY was caught and arrested.  Search incident to arrest officers found four plastic bags of marijuana, a digital scale, and $260 in cash.

More recently, BROADY has advertised marijuana, oxycodone, and promethazine-codeine syrup for sale on Instagram – where he utilizes the vanity name "turbo2x__" and has utilized that

same social media platform to negotiate bulk purchases of both marijuana and oxycodone which he then re-sold.



On February 15, 2023, BROADY posted a picture on his Instagram account showing him standing with other individuals and the caption "Another bloody winter ona souf just lost 5 friends."

BROADY is standing at the far right wearing a balaclava, a parka style jacket, and holding a semi-automatic handgun.



On February 16, 2023, BROADY posted a picture of himself – again wearing a black balaclava – in the kitchen area of PREMISES 1. BROADY is fanning a large amount of United States currency in front of his face and, visible over his shoulder, are numerous pastic bags of marijuana packaged for distribution and approximately six bottles of what appear to be promethazine-codeine syrup.



**D.    The Danger to the Community Created by Defendant's Release Weighs in Favor of Detention**

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" United States v. Munchel, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting United States v. Salerno, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified

even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. United States v. Hale-Cusanelli, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing Munchel, 991 F.3d at 1283.

BROADY poses an obvious and articulable threat to the community as evidenced by his willingness to participate in a broad-daylight shootout from his vehicle in a residential area, and the fact that a sizeable amount of drugs, three firearms, and body armor were recovered from his residence. Even if this Court were to find that BROADY is not a risk of committing additional acts of violence, the risk of dangerousness that he poses to the community justifies pretrial detention.

## CONCLUSION

Defendant is eligible for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(E). Since he is charged with violating 18 U.S.C. § 924(c), there is a rebuttable presumption in favor of pretrial detention in this case. Even if Defendant could present sufficient evidence to rebut the presumption, all four of the Bail Reform Act factors weigh heavily in favor of detention, and Defendant poses a substantial risk of dangerousness to the community if he is released pending trial in this case.

WHEREFORE, the United States respectfully requests that the Court issue an Order granting the United States' motion that the defendant be held without bond pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ James B. Nelson
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Federal Major Crimes Section
601 D. Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel on September 19, 2023.


By:     */s/ James B. Nelson*
JAMES B. NELSON
Assistant United States Attorney